IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 06-cv-01620-CBS-KMT

JANOS TOEVS,
    Plaintiff,
v.

LARRY REID,
SUSAN JONES,
CASE MANAGER J. GLIDEWELL, and
CASE MANAGER KRISTY MOORE,
    Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

      This civil action comes before the court on: (1) the "State Defendants' Motion for Summary Judgment" (filed August 16, 2010) (doc. # 135); and (2) "Plaintiff's Motion for Summary Judgment" (filed August 19, 2010) (doc. # 139). On May 9, 2008, the above-captioned case was referred to Magistrate Judge Craig B. Shaffer to handle all dispositive matters including trial and entry of a final judgment in accordance with 28 U.S.C. 636(c), Fed. R. Civ. P. 73, and D.C. COLO. LCivR 72.2. (*See* doc. # 62). The court has reviewed the Motions, Defendants' Supplement (filed August 19, 2010) (doc. # 138), Mr. Toevs' Response to Defendants' Motion for Summary Judgment (filed August 27, 2010) (doc. # 140), Defendants' Response to Plaintiff's Motion for Summary Judgment (filed September 29, 2010) (doc. # 147), Defendants' Reply in Support of their Motion for Summary Judgment (filed October 1, 2010) (doc. # 148), Mr. Toevs' Reply (filed October 13, 2010) (doc. # 154), the exhibits and affidavits, and the entire case file and is sufficiently advised in the premises.

1

I.    Procedural Background

Mr. Toevs is currently incarcerated at the Sterling Correctional Facility ("SCF") of the Colorado Department of Corrections in Sterling, Colorado.  (*See* notice of change address filed by Mr. Toevs (doc. # 96)).  Mr. Toevs initiated this civil action while he was incarcerated at the Colorado State Penitentiary ("CSP").  Proceeding *pro se*, Mr. Toevs filed his initial Complaint on or about August 16, 2006 pursuant to 42 U.S.C. § 1983 against Larry Reid, Sgt Morris, Lt. Troxel, Case Manager Kristy Moore, Jason Young, Case Manager Judy Lindsey [sic], Case Manager Glidewell, and Joe Ortiz.  (*See* doc. # 3).  At the court's direction (*see* "Order to File Amended Complaint . . ." (doc. # 6)), Mr. Toevs filed his Amended Complaint on November 16, 2006, alleging five claims for relief and dropping all Defendants except Larry Reid, Sgt Morris, Lt. Troxel, Case Manager Kristy Moore, and Executive Director Joe Ortiz.  (*See* doc. # 7).  On January 5, 2007, the court dismissed this action for failure to comply with Fed. R. Civ. P. 8.  (*See* "Order and Judgment of Dismissal" (doc. # 10)).  Mr. Toevs appealed the dismissal and on March 4, 2008, the Tenth Circuit Court of Appeals reversed and remanded.  *Toevs v. Reid*, 267 Fed. Appx. 817 (10th Cir. (Colo.) 2008).  Without seeking leave to amend his pleadings, on May 14, 2008 Mr. Toevs filed a Second Amended Complaint pursuant to 42 U.S.C. § 1983 alleging six claims against Larry Reid, Sgt Morris, Lt. Troxel, Case Manager Kristy Moore, Executive Director Joe Ortiz, Susan Jones, Executive Director Ari Zavaras, Steve Owens, Judy Lindsey, and Case Manager Glidewell, seeking damages and injunctive relief.  (*See* doc. # 65).  Mr. Toevs voluntarily withdrew the Second Amended Complaint on June 19, 2008.  (*See* Courtroom Minutes/Minute Order (doc. # 73)).

2

On March 6, 2009, the court granted in part and denied in part "State Defendants' Motion to Dismiss or for Summary Judgment," directed to the Amended Complaint (doc. # 7). (*See* "Memorandum Opinion and Order" (doc. # 93)). The court determined that Defendants were entitled to qualified immunity on Claims One, Two, and Three based on Mr. Toevs' failure to state or demonstrate a claim upon which relief can be granted.[1] The court further determined that Defendants were entitled to summary judgment on Claim Four based on Mr. Toevs' failure to exhaust his administrative remedies. The court permitted Claim Five to proceed only as to Defendant Ortiz for violation of due process based on whether Mr. Toevs received meaningful reviews of his continued administrative segregation confinement. (*See* doc. # 93). The court concluded that there remained an unresolved fact issue as to whether Mr. Toevs actually received meaningful reviews of his administrative segregation status, rather than sham reviews, as he contends.

On April 17, 2009, Defendants filed a Motion for Summary Judgment and Brief in Support. (*See* docs. # 98 and # 99). On June 5, 2009, Mr. Toevs filed two motions for leave "to Amend and Supplement," seeking to add a request for declaratory judgment and to add Ari Zavaras, the current Executive Director of CDOC, as a Defendant. (*See* docs. # 108 and # 109). On June 15, 2009, the State Defendants filed an Amended Motion for Summary Judgment and Brief in Support, to include "additional grounds for dismissal not included in the original Motion." (*See* docs. # 112 and # 113). At a

---

[1] On July 1, 2008, the court authorized Mr. Toevs to serve discovery limited to the issue of qualified immunity. (*See* Courtroom Minutes/Minute Order (doc. # 78); *Crawford-El v. Britton*, 523 U.S. 574, 598 (invocation of defense of qualified immunity is not a bar to all discovery).

hearing held on September 9, 2009, Mr. Toevs withdrew his pending motions and was given permission to file a new motion for leave to amend his pleading. (*See* doc. # 120). Also on September 9, 2009, the court denied the State Defendants' pending Motions for Summary Judgment without prejudice on procedural grounds and reinstated Larry Reid as a Defendant. (*See id.*).

On September 18, 2009, Mr. Toevs moved once again to amend his pleadings, attaching a copy of his proposed Third Amended Complaint ("TAC"). (*See* docs. # 121, # 121-1). In his proposed TAC, Mr. Toevs sought to drop Joe Ortiz as a Defendant, to add nine new Defendants, and sought "Compensatory and Punitive Damages and Declaratory Relief in the form of a ruling that my constitutional rights were violated." (*See* TAC (doc. # 121-1)). Mr. Toevs' proposed TAC alleged a single constitutional claim pursuant to 42 U.S.C. § 1983 for "Deprivation of Liberty Without Due Process" against CDOC employees Reid, Slack and Jones as CDOC "Administrative Head[s]" and against Glidewell, Estrada, Owens, Moore, Holcomb, and John and/or Jane Does as CDOC "Case Manager[s]/Committee Member[s]," all in their individual capacities only. (*See id.* at pp. 1-3 of 12). Defendants opposed Mr. Toevs' Motion on several grounds.

On March 12, 2010, the court granted in part and denied in part Mr. Toevs' "Motion for Leave to Amend." (*See* "Memorandum Opinion and Order" (doc. # 127)). The TAC was allowed to proceed against Defendants Larry Reid, Susan Jones, Case Manager Glidewell, and Case Manager Kristi Moore in their individual capacities only, on a single claim for relief pursuant to 42 U.S.C. § 1983 for "Deprivation of Liberty Without Due Process" based on conduct that occurred after August of 2004. (*See id.*).

4

Mr. Toevs seeks compensatory and punitive damages and declaratory relief. Mr. Toevs concedes that his request for declaratory relief merely reiterates his request for damages and would thus be mooted by any determination on his claim for damages. (*See* Mr. Toevs' statements at November 10, 2009 hearing; Memorandum Opinion and Order (doc. # 127) at p. 15 of 18). Defendants move for summary judgment on the TAC on the grounds: (1) that Mr. Toevs has not exhausted his administrative remedies as required by Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a); (2) that Mr. Toevs cannot demonstrate that they violated any clearly established constitutional right and thus they are entitled to qualified immunity; and (3) that because Mr. Toevs fails to show any personal participation in the alleged violation by Defendants Reid and Jones, they cannot be liable. (*See* Motion (doc. # 136) at p. 6 of 19).

II.      Standard of Review

Both Mr. Toevs and Defendants seek summary judgment. "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (cited in *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1147 (10th Cir. 2000)). "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Montgomery v. Board of County Commissioners of Douglas County, Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation

marks and citations omitted). "When applying this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Id.* "All doubts must be resolved in favor of the existence of triable issues of fact." *Id.*

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a *pro se* litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

Defendants raise the defense of qualified immunity. "[W]e review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez*, 563 F.3d at 1088 (citing *Pearson v. Callahan*, ___ U.S. ___, ___, 129 S.Ct. 808, 815-16 (2009)). In determining whether a constitutional violation occurred, the court must view "the facts in the light most favorable to the plaintiff." *Kelley v. City of Albuquerque*, 542 F.3d 802, 821 (10th Cir. 2008). Only if Mr.

Toevs satisfies both of these prongs will the burden shift to Defendants to assume the normal burden of showing that there are no disputed material facts and that they are entitled to judgment as a matter of law. *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008). If "the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). *See also Wilder*, 490 F.3d at 813 ("If the [defendant]'s conduct did not violate a constitutional right, the inquiry ends and the [defendant] is entitled to qualified immunity.") (citation omitted). While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, the order of those analytical steps is no longer mandatory. *See Pearson*, 129 S.Ct. at 818 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001)).

III.    Analysis

Mr. Toevs alleges a single claim for relief pursuant to 42 U.S.C. § 1983 for "Deprivation of Liberty Without Due Process." Title 42 U.S.C. § 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a

7

right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

1.      Due Process Claim

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' " *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV).  "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).  Prisoners do not have a constitutionally recognized liberty interest in their security classification or placement. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.");  *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.");  *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (Colorado laws and regulations do not entitle inmates to remain in the general population absent certain conduct);  *Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1990) ("a prisoner enjoys no constitutional right to remain in a particular institution and

generally is not entitled to due process protections prior to such a transfer. . . .").

In *Sandin v. Conner*, the Supreme Court held that an inmate's liberty interest is protected under the Due Process Clause if the restraints or conditions imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). The Tenth Circuit Court of Appeals has ruled that liberty interest claims by prisoners are "to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis." *Steffey*, 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir.1999) (other citations omitted). "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224 (alteration in original, quoting *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). "[T]he touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has identified relevant factors to consider when determining whether placement in administrative segregation implicates a protected liberty interest: (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme;

(3) [whether] the placement increases the duration of confinement . . . ; and (4) [whether] the placement is indeterminate." *DiMarco*, 473 F.3d at 1342. "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *DiMarco*, 473 F.3d at 1342 (citation omitted).

At all times relevant to this action, Mr. Toevs was a prisoner in the custody of the CDOC, where he had been "subject to the Quality of Life Level Program (QLLP) a form of Administrative Segregation (Ad Seg) in the Colorado State Penitentiary (CSP) and Centennial Correction Facility (CCF) since 3/04/02." (*See* doc. # 7 at p. 4 of 28). Inmates in administrative segregation at CSP and CCF are governed by OM 650-100, which establishes the six-step QLLP for inmates placed in administrative segregation. (*See* OM 650-100 (doc. # 136-2);  Affidavit of Kristi Moore (doc. # 136-1) at ¶ 3; Affidavit of Jean Glidewell (doc. # 138-1) at ¶ 3).  The QLLP is "[a] stratified incentive based program based on behavior and program participation consisting of levels one thru six." (*See* OM 650-100, III. E. (doc. # 136-2) at p. 2 of 16).  QLLP "[i]ncentives are privileges which are earned based strictly on appropriate behavior and program compliance." (*See id.* at III. F.).  Inmates placed in the administrative segregation's QLLP system must progress through six levels of classification before they can be returned to the general population. (*See id.*;  Affidavit of Kristi Moore (doc. # 136-1) at ¶ 3).

The court previously determined that Mr. Toevs failed to state a claim for an enforceable liberty interest as to three of the relevant factors.  Mr. Toevs' pleadings established that his placement in the QLLP related to and furthered a legitimate

penological interest by responding to his negative attitude and behavior, that his placement did not increase the duration of his life sentence to confinement, and that the conditions in QLLP placement were not sufficiently atypical or extreme in relation to the ordinary incidents of prison life to implicate a liberty interest. (*See* doc. # 93 at pp. 11-17 of 29). The court also determined that because Mr. Toevs alleged placement in the QLLP for a lengthy period of time without meaningful periodic reviews, he may state a claim for atypical and significant restraint deserving due process protections in the form of meaningful periodic reviews of his administrative segregation status. *See Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (allegation of 750 days spent in segregation "may itself be atypical and significant"); *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (stating that confinement in SHU exceeding 305 days was atypical); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (prisoner's almost eight years in administrative custody was "atypical"); *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (While "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, confinement in administrative segregation for a period of 1700 days may constitute atypical and significant restraint deserving due process protections).

The next question is what process was due. *See Wilkinson*, 545 U.S. at 224, 125 S.Ct. 2384 (applying framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Due process requires no more than the 30-day review procedure that Mr. Toevs alleges he has received. *See Rahman X v. Morgan*, 300 F.3d 970, 973-74 (8th Cir. 2002) (reconsideration of housing assignment every 60 days constituted sufficient due process); *Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir. 1983) (due process requires

procedure for periodic review of administrative segregation status); *Hunt v. Sapien*, 480 F. Supp. 2d 1271, 1277 (D. Kan.) (placement was not indefinite where reviewed weekly for the first 60 days, and subsequently reviewed monthly, after 180 days, and annually), *reconsideration denied*, 2007 WL 1520906 (D. Kan. 2007); *DiMarco*, 473 F.3d at 1343 (due process satisfied where placement was reviewed every 90 days). AR No. 600-02 indicates that "the status of an offender who had a classification hearing which resulted in assignment to administrative segregation shall be reviewed" on a regular and frequent basis. (*See* doc. # 81-6 at p. 9 of 15). While Mr. Toevs concedes that periodic reviews of his administrative segregation status were conducted, he alleges and argues that from August 2004 "to 3/17/09" he received only "reviews which were perfunctory, meaningless, and all said the same thing." (*See* TAC (doc. # 128) at p. 8 of 12). *See McClary v. Coughlin*, 87 F. Supp. 2d 205, 214 (W.D.N.Y. 2000) ("a fundamental requirement of all due process is that it be 'meaningful' and not a sham or a fraud") (citation omitted); *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997) (due to the length of confinement, court must engage in a fact-specific inquiry to determine whether it constitutes an "atypical and significant hardship" under *Sandin*); *Kelly v. Brewer*, 525 F.2d 394, 400 (8th Cir. 1975) ("where an inmate is held in segregation for a prolonged or indefinite period of time due process requires that his situation be reviewed periodically in a meaningful way . . .").

The due process right to a periodic review of administrative confinement derives from *Hewitt v. Helms*, where the Supreme Court stated that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate." 459 U.S. 460, 477 n. 9 (1983). The Court found that "prison officials must engage in some sort of

periodic review of the confinement of such inmates." *Id.* However, such "review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* "The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner - which will have been ascertained when determining to confine the inmate to administrative segregation - and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner." *Id.*[2] *Hewitt* makes clear that the periodic review process need not be formalized.

In determining whether review was "meaningful," the limited nature of the due process right must be emphasized. Input from the inmate is not "necessarily require[d]" and the decision may be made based on facts which have been ascertained at the initial hearing combined with an "official's general knowledge of prison conditions and tensions." *Hewitt*, 459 U.S. at 477 n. 9. It must also be noted that it is Mr. Toevs who has the burden of proving a due process violation, not the Defendants who have the burden of disproving such an allegation.

a.      Defendants Glidewell and Moore

Mr. Toevs alleges that "[f]rom October of 2005 until January of 2006," Defendant Glidewell "deprived me of liberty without due process by subjecting me to reviews which were perfunctory, meaningless and all said the same thing" and that "[f]rom March of 2006 until May of 2006," Defendant Moore "deprived me of liberty without due process

---

[2]      This portion of the holding in *Hewitt* has not been superannuated by later case law.

by subjecting me to reviews which were perfunctory, meaningless and all said the same thing." (*See* doc. # 128 at p. 8 of 12).

Inmates at QLLP Levels 1 and 2 receive periodic reviews. (*See* OM 650-100, IV. B., D. (doc. # 136-2) at pp. 3-4 of 16; Affidavit of Kristi Moore (doc. # 136-6) at ¶ 4).

> Inmates' periodic reviews are initiated by case managers and consist of a review of information obtained from the case manager's contacts with the inmate during the review period, a review of Chronlog Reports, chrons entered by housing staff, and incident reports, if any. The reviews also consider whether the reasons for the inmate's initial placement in administrative segregation still exist. If the case manager determines from a review that the inmate has met all expectations, he or she recommends a progression to the next level in the QLLP. If not, he or she recommends no change.
> The case manager's recommendations are reviewed by the Administrative Segregation Classification Committee, which consists of the inmate's case manager, another case manager from the same unit, and the committee's chairperson. If the committee is in agreement, the review form goes to the facility's Administrative Head or a designee, who may approve or deny the committee's recommendations.

(doc. # 136-1 at ¶ 15-16; doc. # 138-1 at ¶ 14-15). Inmates who successfully complete Level 3 are moved into the less restrictive "close custody" classification. (*See* Affidavit of Kristi Moore (doc. # 136-6) at ¶ 4). Inmates who reach Levels 4, 5, and 6 are no longer subject to the administrative segregation review process. (*See* Affidavit of Kristi Moore (doc. # 136-6) at ¶ 4; Affidavit of Jean Glidewell (doc. # 138-1) at ¶ 3). Inmates who successfully complete Level 6 progress to the general population. *Id.*

On September 9, 2005, Mr. Toevs' QLLP status was reduced from Level 6 to 1. (*See* doc. # 136-13; doc. # 136-11; doc. # 136-6 at ¶ 8). On December 2, 2005, Mr. Toevs progressed to Level 3 after a QLLP review. (*See* Affidavit of Kristi Moore (doc. # 136-6) at ¶ 9). On July 6, 2007, Mr. Toevs progressed from administrative segregation to close custody and was transferred from CSP to CCF on October 15, 2007. (*See*

Affidavit of Kristi Moore (doc. # 136-6) at ¶ 11).  Mr. Toevs completed the QLLP and progressed out of the Progressive Reintegration Program ("PRO") unit in January 2009. (*See* doc. # 136-1 at ¶ 22; TAC (doc. # 128) at p. 7 of 12).  Mr. Toevs has been housed in the general population at SCF since March 2009, when a bed became available. (*See* doc. # 136-1 at ¶ 22).

Upon review of the record, the court finds that Mr. Toevs has not raised a material question of fact as to the adequacy of the periodic reviews.  As to Mr. Toevs' argument that he "was provided no opportunity to be heard" (*see* Mr. Toevs' Motion (doc. # 139) at p. 3 of 89), *Hewitt* specifically held that there need be no requirement that inmates submit evidence or statements to the review committee.  459 U.S. at 477 n. 9.  Mr. Toevs objects to the identical language in the reviews.  *Hewitt* also made clear that a decision to continue an inmate in administrative segregation could be based on the same facts and considerations that compelled the initial transfer to administrative segregation.  *Id.*  The reviews confirm the basis for Mr. Toevs' placement at Level 1. Unless there were circumstances warranting a change, Mr. Toevs' status did not change.  For example, when Mr. Toevs regressed to Level 1, he was recommended for anger management, prison life skills, and crime victim impact programs, which were noted on his early reviews.  (*See* doc. # 136-11 at pp. 1-2 of 10). Mr. Toevs' reviews were updated as his circumstances changed.  (*See* doc. # 136-1 at ¶ 12; doc. # 138-1 at ¶ 11).  The fact that his reviews included much of the same information is not a basis for finding a violation of due process.

Mr. Toevs has not put forward evidence indicating either that the reviews were not made in a sufficiently timely fashion or that the substance of the reviews was

insufficient to meet the minimal requirements of due process.  The evidence indicates no failure to make timely reviews. To the contrary, the record supports the conclusion that the periodic reviews were timely performed.  Mr. Toevs received reviews every 7 days for the first two months from the time his QLLP status was reduced to Level 1 until November 14, 2005, and every 30 days thereafter.  (*See* doc. # 136-11 at pp. 1-10 of 10; doc. # 136-4 at pp. 1-4 of 4; doc. # 136-1 at ¶ 19; AR 600-02 (doc. # 136-3) at p. 9 of 15; doc. # 139 at p. 56 of 89).

The evidence fails to indicate that the reviews were insufficient under the requirements of due process.  The reviews took the original record into account.  Mr. Toevs' significant record of escape attempts, criminal behavior, noncompliance, and negative behavior was a sufficient basis for placement in administrative segregation. (*See* doc. # 136-11 at pp. 1-7 of 10).  The reviews reflected changes in Mr. Toevs' status, such as reaching Level 1 on October 7, 2005, assignment to a recommended "Crime Impact on Victims" program, and reaching Level 2 on October 13, 2005.  (*See* doc. # 136-11 at pp. 2-3, 5 of 10).  The reviews reflect that Mr. Toevs was removed from Restricted Privileges status on December 9, 2005, that he progressed to Level 3 on or about January 14, 2006, after a QLLP review, and that he completed the Crime Impact on Victims program on March 1, 2006.  (*See* doc. # 136-4 at p. 1-2 of 4; doc. # 136-11 at pp. 9-10 of 10).  Pursuant to the review process, Mr. Toevs progressed to Level 3 between September 2005 and January 2006.  Mr. Toevs does not present any evidence of circumstances or knowledge which the Defendants should have taken into account and didn't.  The evidence shows that Defendants Moore and Glidewell spoke regularly with Mr. Toevs and that he had frequent opportunities to communicate any information

16

or concerns to them.  (*See* doc. # 136-1 at ¶¶ 13, 15, 17, 19, 21; doc. # 136-5; doc. # 138-1 at ¶¶ 12, 20, 21; doc. # 136-12).  Other evidence that suggests the reviews were meaningful is Mr. Toevs' eventual progression to the general population in January 2009.  There is no indication that the decision to release him to the general population was based on anything other than valid penological considerations.  The court finds that the periodic reviews in this case satisfied the requirements of due process.

The court determines that Mr. Toevs fails to satisfy the first part of his two-part burden: that Defendants Moore or Glidewell violated a constitutional right.  Defendants Moore and Glidewell are thus entitled to qualified immunity and entitled to summary judgment on the single remaining claim for relief in the TAC.  *See Wilder*, 490 F. 3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right);  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) ("if the plaintiff fails to carry either part of his two-part [qualified immunity] burden, the defendant is entitled to qualified immunity.") (citation omitted).


b.     Defendants Reid and Jones

Mr. Toevs alleges that "[f]rom some point in 2005 until some point in 2007 (the duration of his tenure as Administrative Head of CSP/CCF)," Defendant Reid "deprived me of liberty without due process by enforcing OM 650-100 . . ." and that "[f]rom some point in 2007 until March 17, 2009 (the duration of my assignment to QLLP under her tenure as Administrative head of CSP/CCF)," Defendant Jones "deprived me of liberty without due process by enforcing OM-650-100. . . ."  (*See* doc. # 128 at pp. 9-10 of 12).

Mr. Toevs sues all of the Defendants only in their individual capacities under §
1983.  Regardless of the particular constitutional theory, individual liability under § 1983
must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416,
1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal
involvement in the alleged constitutional violation) (citation omitted);  *Mitchell v.
Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential
allegation in a civil rights action) (citation omitted);  *Bennett v. Passic*, 545 F.2d 1260,
1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983
claim.").

A defendant may not be held liable merely because of his or her supervisory
position.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  Government officials
may not be held liable for the unconstitutional conduct of their subordinates under a
theory of *respondeat superior*.  *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1290 (D. Colo.
2009) ("*respondeat superior* is not within the purview of § 1983").  "There is no concept
of strict supervisor liability under § 1983."  *Serna v. Colorado Dept. of Corrections*, 455
F.3d 1146, 1151-52 (10th Cir. 2006).  "Supervisors are only liable under § 1983 for their
own culpable involvement in the violation of a person's constitutional rights."  *Id.*  There
must be an affirmative link between the alleged constitutional violation and the
defendant's own participation or failure to supervise.  *Butler v. City of Norman*, 992 F.2d
1053, 1055 (10th Cir. 1993).  *See also McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir.
1983) (an individual cannot be held liable in a section 1983 action unless he
"participated or acquiesced" in an alleged constitutional violation).

Defendants Reid and Jones argue that Mr. Toevs' claim against them must be

dismissed for failure to allege the requisite personal participation. Mr. Toevs does not allege or demonstrate that Defendants Reid or Jones personally evaluated any of the challenged reviews or that their signatures appear on any of the reviews. It is not alleged or demonstrated that Defendants Reid or Jones had any specific knowledge of Mr. Toevs' circumstances or administrative segregation status. Mr. Toevs' allegations and evidence do not support a claim that Defendants Reid or Jones had any direct involvement in, personal participation in, or supervisory liability for the alleged violation of Mr. Toevs' due process rights. Mr. Toevs has not adequately alleged or demonstrated "an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Serna*, 455 F.3d at 1151 (internal quotation marks and citations omitted). Mr. Toevs' failure to allege or demonstrate the requisite personal participation leaves no basis for holding Defendants Reid or Jones individually liable under § 1983 for the alleged violation of his due process rights.

Mr. Toevs' allegation that "enforcing OM 650-100 . . mooted any possible due process that could have been afforded by AR 600-02" is merely conclusory. "[C]onclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted). Further, to the extent that Mr. Toevs is alleging that Defendants violated prison regulations, the "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993). Finally, to the extent Mr. Toevs alleges that "OM 650-100 rendered the 30 day reviews meaningless gestures which could not have secured my release from the QLLP," the court has determined that the

periodic reviews satisfied the requirements of due process and that Mr. Toevs has not carried his burden to show that Defendants violated a constitutional right. "In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution." *Serna*, 455 F.3d at 1151.

As Mr. Toevs fails to demonstrate that Defendants Reid or Jones violated a constitutional right, Defendants Reid and Jones are entitled to qualified immunity and entitled to summary judgment on the single remaining claim for relief in the TAC.

2.      Exhaustion of Administrative Remedies

Defendants argue that Mr. Toevs' claim is barred by the PLRA for failure to exhaust administrative remedies. Prior to filing this civil action, Mr. Toevs was required to exhaust administrative remedies pursuant to the PLRA. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper exhaustion" of administrative remedies, which means the plaintiff must utilize all administrative remedies provided and must comply with the deadlines and other procedural rules prior to filing a federal lawsuit relating to the conditions of his confinement. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). *See*

*also Jones v. Bock*, 549 U.S. at 218 ("to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, – rules that are defined not by the PLRA, but by the prison grievance process itself") (internal quotation marks and citation omitted).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' "  *Jones*, 549 U.S. at 218.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones*, 549 U.S. at 218.

Prior to *Jones v. Bock*, 549 U.S. at 199, the Tenth Circuit interpreted the PLRA as imposing "a pleading requirement."  *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1210 (10th Cir. 2003), *abrogated,* 549 U.S. at 199.  "The Supreme Court recently rejected our rule in *Steele*, however, and set forth a new standard to govern PLRA lawsuits: 'failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints.' "  *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. at 216 and citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223 (10th Cir. 2007)).  Now "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."  *Roberts v. Barreras*, 484 F.3d at 1241.

As the court has determined that Mr. Toevs has not demonstrated violation of his due process rights by any of the Defendants, the court need not address whether Mr. Toevs properly exhausted his administrative remedies.  If the court addressed Mr. Toevs' exhaustion of his administrative remedies, it would determine that a triable issue

21

of fact may exist. The evidence is undisputed that Mr. Toevs did not appeal or grieve his administrative reviews. (*See* doc. # 136-1 at ¶ 21). Defendants present evidence that administrative exhaustion remedies were available to Mr. Toevs. (*See* OM 650-100 IV. B. 1. (doc. # 136-2) at p. 3 of 16 ("Quality of Life Program Incentive Levels shall be implemented independent of any classification, COPD actions or due process hearing. *Decisions made for incentive levels may be grieved by the offender.* Decisions that [e]ffect the offender's level will require supervisor approval.") (emphasis added); AR 850-04 IV. A. 5. (doc. # 136-10) at p. 2 of 16 (delineating non-grievable matters) and p. 12 of 16 (Grievance Subject List including "Other" category, which "may include non-grievable issues like classification, disciplinary proceedings, no grounds, or unique issues."). However, Mr. Toevs has presented evidence that his administrative segregation reviews were not appealable. (*See* Admissions of Defendant Jones (doc. # 139) at p. 24 of 89 ("Administrative segregation reviews are not appealable," citing AR 850-04 IV. A. 5.)). Drawing all reasonable inferences from the evidence in the light most favorable to Mr. Toevs, the court cannot conclude that Defendants have shown that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law on the issue of exhaustion of administrative remedies.

Accordingly, IT IS ORDERED that:

1.    The "State Defendants' Motion for Summary Judgment" (filed August 16, 2010) (doc. # 135) is GRANTED.

2.    The "Plaintiff's Motion for Summary Judgment" (filed August 19, 2010) (doc. # 139) is DENIED.

3.     Summary judgment shall enter on the Third Amended Complaint (doc. # 128) in favor of Defendants and against Plaintiff.

4.     In light of the court's ruling on the parties' Motions for Summary Judgment, Mr. Toevs' "Motion for Counsel" (filed September 2, 2010) (doc. # 143) is DENIED as moot.

DATED at Denver, Colorado, this 28th day of October, 2010.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge